IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD S. HOWZE,                   )
                Plaintiff,         )
                                   )
     vs.                           ) Civil Action No. 04-1222
                                   ) Judge Joy Flowers Conti/
JO ANNE B. BARNHART,               ) Magistrate Judge Amy Reynolds Hay
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                Defendant.         )

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

        It is respectfully recommended that plaintiff's motion

for summary judgment (Docket No. 14) be denied, that defendant's

motion for summary judgment (Docket No. 16) be granted and that

the decision of the Commissioner be affirmed.


II.  REPORT

        On August 16, 2005, plaintiff, Donald S. Howze,

submitted the instant complaint pursuant to Section 205(g) of the

Social Security Act ("the Act"), as amended, 42 U.S.C. § 405(g),

seeking review of the Commissioner of Social Security's final

decision disallowing his claim for a period of disability or for

disability insurance benefits ("DIB") under Sections 216(I) and

223 of the Act, as amended, 42 U.S.C. §§ 416(I) and 423.

A.    Procedural History

Plaintiff filed an application for DIB on February 4,
2003 (Tr. 78-80).  Although plaintiff initially alleged a
disability as of March 31, 2002, he subsequently amended his
alleged onset date to October 30, 1998, which was the last date
he worked (Tr. 22, 78, 87).  Benefits were denied and on May 19,
2003, and plaintiff, who was by then represented by counsel,
requested a hearing (Tr. 61, 68).  A hearing was held on March 2,
2004, before an Administrative Law Judge ("ALJ"), who found that
plaintiff was disabled as of December 13, 2002 (Tr. 31-60, 18-
25).  The ALJ, however, mistakenly identified plaintiff's last
date insured as December 31, 2002 (Tr. 22), and, as a result, the
Appeals Council notified plaintiff on June 28, 2004, that it was
reviewing the ALJ's decision and planned to find that he did not
qualify for a period of disability starting December 13, 2002,
since the record established that his last date insured was June
30, 2002, and not December 31, 2002 (Tr. 14-17, 82, 96).[1]
Although plaintiff was invited to provide the Appeals Council
with additional information regarding his insured status or
disability starting on or before June 30, 2002, none was
submitted (Tr. 12, 15).  As such, on August 23, 2004, the Appeals
Council found that plaintiff was not entitled to a period of

---

[1]      In order to qualify for DIB, the claimant must establish
      that his disability began on or before the date last
      insured.  42 U.S.C. §§ 423(a), (c); 20 C.F.R. § 404.101
      (2004).

2

disability or disability insurance benefits (Tr. 11-13).
Plaintiff now seeks judicial review of the Appeals Council's
decision which is the final decision of the Commissioner (Tr. 8).

      B.    Factual Summary

        The claimant was forty-six years old at the time of the
ALJ's decision (Tr. 22).  He graduated from high school and had
worked as an electrical linesman, a meter reader and as a power
station worker but has not worked since October of 1998 (Tr. 38).

        At the hearing conducted on March 2, 2004, plaintiff
testified that he had been under psychiatric treatment for
depression for 2½ years and that he still has thoughts of suicide
and distrusts everyone (Tr. 40-41).  Plaintiff also stated that
he doesn't like to leave his house and stays in his house for
weeks at a time and that his only friends are a woman named
Catherine and his parents (Tr. 41, 46, 49, 50).

        Plaintiff also testified that he suffers from diabetes
and glaucoma and had his colon removed in July of 2003 (Tr. 42).
Plaintiff stated that he gets tingling and numbness in his toes
and fingers that comes and goes and sometimes causes him to lose
his grip on things and that his legs go to sleep if he sits for
too long (Tr. 44-45).  As well, plaintiff testified that he can
walk and stand for about five minutes, sit for about twenty
minutes and can lift about twenty pounds (Tr. 44-45, 48).

In addition, plaintiff attested to the fact that he is able to take care of his personal needs without assistance and does the dishes but that he needs help doing other household chores (Tr. 46, 48).  It was also plaintiff's testimony that he was trying to get his medications under control but his pain is still at a level 8 out of 10 and he sleeps 2½ to 3½ hours a day because of his medication (Tr. 45-46, 47).  Further, when asked why he felt he was unable to work plaintiff responded that it was because of the constant pain, the maintenance of his diabetes, the neuropathy and glaucoma and because he was "tired of the fight" (Tr. 48).

A Vocational Expert ("VE") was also called to testify at the hearing and categorized plaintiff's past work as a power station worker as light to medium, semi-skilled; his work as a linesman was medium to heavy, semi-skilled; and his job as a meter reader was light, unskilled.  In response to a hypothetical question involving a 46 year old individual with plaintiff's education and work experience who was limited to sedentary activity with no sustained exertion and simple, repetitive type tasks with low stress and which would not require high quota production or more than incidental interaction with the public (Tr. 52).  The VE responded that such an individual could perform a number of jobs at the sedentary level which exist in significant numbers in the local and national economies such as

4

cashier, surveillance systems operator and general office clerk (Tr. 53).  The VE also testified, however, that if the individual had to miss work three or more times per month for an extended period or needed to take a five minute break every ten minutes that he would not be employable (Tr. 53, 54-56).  If, however, the individual merely needed flexibility regarding when he took breaks, the VE stated that the person would still be able to work as a general office clerk and that the number of cashier and surveillance system operator positions would only be reduced by fifty percent (Tr. 54).  The VE also indicated that the use of a cane would only limit the number of jobs as an office clerk by fifty percent and would still permit the individual to work as a cashier and surveillance systems operator.  Finally, the VE testified that if the individual dropped things so frequently that he was unable to keep up with performance quotas or otherwise perform his job or if he had to lie down 2½ to 3½ hours a day he would be unemployable (Tr. 57-58).

As well, certain medical evidence was considered.  In March of 1998, plaintiff's treating physician, Dr. A. Khan, M.D., indicated that plaintiff suffered from chronic lower back pain, depression, hypertension, diabetes mellitus, high cholesterol, obesity, peptic ulcer disease, Arnold Chiari malformation type I, presbipia/ambliopia, gout, and a hernia (TR. 228).

At about the same time, plaintiff began receiving psychiatric care at Turtle Creek Valley MH/MR, Inc. for depression (Tr. 289-302).  On May 6, 1998, his treating psychiatrist, Elliott T. Shinn, M.D., reported that although plaintiff had not been taking the Wellbutrin for three weeks he was only mildly depressed and they agreed to a trial with no antidepressants (Tr. 133, 137).  Dr. Shinn also assessed a global assessment of functioning ("GAF") rating of 65 indicating that plaintiff had only mild symptoms (Id.).  See Diagnostic & Statistical Manual for Mental Disorders, 32 (4th ed. 1994)("DSM").  It appears that plaintiff subsequently took antidepressants and attended therapy on and off through July of 2000, at which time plaintiff discontinued therapy with no depressive symptoms and had a GAF rating of 80 indicating no more than slight impairment and only "transient and expectable reactions to psychosocial stressors" (Tr. 126-29, 131-32, 281, 283-84).  See DSM at 32.

In April of 1999, Dr. Kahn indicated that plaintiff was unable to work because of pain but stated that plaintiff could perform sedentary work with frequent rest breaks, no prolonged sitting or standing, pushing or pulling, bending or twisting of the spine (Tr. 211, 279-280).  Nevertheless, no clinical or laboratory findings were reported to support Dr. Kahn's assessment.

In August of 1999, an EMG was performed which showed chronic neuropathy on the right side with no acute changes (Tr. 208).  It was reported in April of 2000 that plaintiff had no loss of sensation in his feet due to diabetes and in November of that year it was reported that plaintiff's diabetes was "controlled" (Tr. 202, 194).

Plaintiff began receiving care for his diabetes in May, of 2001 at the Joslin Diabetes center (Tr. 144-46).  At that time, plaintiff reported to Dr. Alexander Tal that an eye examination had shown glaucoma but no retinopathy (Tr. 144).  As well, on June 27, 2001, Dr. Tal reported that plaintiff's blood sugar was "much improved" with three insulin shots per day and by September 2001, Dr. Tal indicated that plaintiff's diabetes was "under excellent control" (Tr. 143, 142).

Plaintiff continued to take pain medication for neuropathic leg pain and in March of 2002 reported using a cane (Tr. 186, 140).  Plaintiff reported abdominal discomfort in May of 2002 but a subsequent CT scan of the abdomen showed no abnormalities (Tr. 184, 227).

In September of 2002, it was reported that plaintiff had stopped taking his insulin and, consequently, surgery to repair a hernia had to be postponed (Tr. 138, 150, 181).  Although plaintiff indicated on October 7, 2002, that he had started back on insulin, it was reported on October 10, 2002,

that he was not taking his medications but had no complaints (Tr. 181, 180).

A stress EKG performed on November 15, 2002, after plaintiff began experiencing chest pain was abnormal (Tr. 153-54, 231-32).  Plaintiff chose to treat his cardiac impairment by maximizing medical treatment rather than a cardiac catheterization and tailored treatment (Tr. 230).  Although plaintiff expressed dissatisfaction with his hernia in December of 2002, it was explained that he needed to address his cardiac situation prior to having surgery on his hernia (Tr. 178).

An eye exam performed in March of 2003, again revealed no evidence of diabetic retinopathy (Tr. 247).

As well, a state agency physician, Frank Bryan, M.D., reviewed plaintiff's medical records in March of 2003, and found that the clinical findings showed only mild neuropathy and that as of June 2002 plaintiff could have performed a full range of light work (Tr. 252-61).

In April of 2003, Roger Glover, Ph.D., a state agency psychiatrist, reviewed the evidence of record and found that plaintiff had no severe mental impairments (Tr. 262-76).

Based on this record evidence, the ALJ found that plaintiff was disabled as of December 13, 2002, when he was hospitalized with colitis which, after a number of other

8

hospitalizations, eventually led to his having a colostomy in
July of 2003 (Tr. 24, 156-70, 315, 326-27, 334, 345-48, 351-59).
Prior to that date, the ALJ found that plaintiff could perform
simple repetitive sedentary work in a low stress environment,
with close access to a restroom, no sustained exertion and no
more than incidental contact with the public (Tr. 23-25).  Based
on the VE's testimony that there were a significant number of
jobs in the national economy that plaintiff could have performed
under these circumstances, the ALJ found that plaintiff was not
disabled prior to December 13, 2002 (Tr. 23-24, 52-53).

        Although the Appeals Council incorporated the ALJ's
statement of the evidence it disagreed with the ALJ's findings
with regard to plaintiff last date insured (Tr. 11, 12).  As
previously discussed, although the ALJ stated that plaintiff's
date last insured was December 31, 2002, the evidence based on
plaintiff's earning record demonstrates that plaintiff's date
last insured for DIB is actually June 30, 2002 (Tr. 12, 82-85,
96).  Because plaintiff was not disabled prior to his date last
insured, the Appeals Council determined that he was not entitled
to disability benefits (Tr. 12).

    C.   Standard of Review

        In reviewing the final decision of the Commissioner
denying a claim for a period of disability or for disability
insurance benefits under Sections 216(I) and 223 of the Act, the

question before the Court is whether there is substantial

evidence to support the findings of the Commissioner.  42 U.S.C.

§ 405(g).  See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.

1999); Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d

Cir. 1986), cert. denied, 482 U.S. 905 (1987).  Substantial

evidence is defined as less than a preponderance of the evidence

and more than a mere scintilla; it is "such relevant evidence as

a reasonable mind might accept as adequate to support a

conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988);

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

        A reviewing Court is bound by the Commissioner's

findings of fact if they are supported by substantial evidence in

the record.  Id.  A Court must affirm the final decision of the

Commissioner if it is supported by substantial evidence,

regardless of whether it would have decided the case differently

had it been the trier of fact.  Hartranft v. Apfel, 181 F.3d at

360.

        In the instant case, in addition to determining whether

the Commissioner's finding that plaintiff was disabled only as of

December 13, 2002, is supported by substantial evidence the Court

must also address whether the Commissioner properly found that

plaintiff's last date insured was June 30, 2002, or whether the

Commissioner is bound by the ALJ's statement indicating that

plaintiff's last date insured was December, 2002.

D.    <u>Discussion</u>

Notably, plaintiff has only addressed the latter issue
in a footnote and in so do doing appears to have mischaracterized
the record.  <u>See</u> Plaintiff's Brief, p. 3 n.1 (Docket No 15).
Indeed, plaintiff asserts that his last date insured was
initially documented as December 31, 2002, both when he filed
this claim and a previous claim, and that he was only informed
that his last date insured was June 30, 2002, when the Appeals
Council undertook to review the ALJ's decision.  As such,
plaintiff argues that it would be unfair and unjust to recognize
any date as the last date insured other than December 31, 2002,
as initially communicated to him by the Commissioner.

Review of the record indicates, however, that
plaintiff's last date insured was first assessed by the Agency in
February of 2003, and that, based on plaintiff's earnings record,
it was determined that his last date insured was June 30, 2002
(Tr. 96-98).  As well, in April of 2003 plaintiff was notified
that he had been found not disabled as of his date last insured
which was listed as June 30, 2002 (Tr. 61-63), and in April of
2003, the Agency again determined that plaintiff's last date
insured, based on his earnings record, was June, 2002 (Tr. 82-
85).  Thus, plaintiff's assertion that his last date insured was
"initially documented" as of December 31, 2002, is not supported
by the record.

Moreover, plaintiff has not asserted that June 30, 2002, is not his last date insured or presented any evidence to support such a finding but rather appears to ask the Court to simply ignore the fact that his last date insured was June 30, 2002.  Plaintiff, however, has not provided the Court with a reason for doing so other than to point to the fact that the ALJ misstated the date in his decision.  The ALJ's decision, however, is not the final determination of the Commissioner from which plaintiff appeals.  To the contrary, plaintiff seeks review of the decision of the Appeals Council which, having decided to review the case, may properly "affirm, modify or reverse the administrative law judge hearing decision, or it may adopt, modify or reject a recommended decision."  20 C.F.R. § 404.979 (2004).  See 20 C.F.R. § 404.969(a); 20 C.F.R. § 404.981.  Thus, the fact that the ALJ misstated plaintiff's last date insured is not only not binding on the Commissioner but does not alter the fact that plaintiff's last date insured is June 30, 2002 – a fact which plaintiff has not disputed.  Because an individual must be fully insured to qualify for disability benefits, plaintiff is not entitled to benefits based on a disability beginning in December of 2002, or six months after his insurance lapsed.  See 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.101 (2004).

Plaintiff nevertheless argues that the ALJ's finding that he was disabled only as of December 13, 2002, is not

12

supported by substantial evidence.  Initially, plaintiff
complains that the ALJ did not afford the opinions and reports of
his treating physician controlling weight and, in particular, Dr.
Kahn's finding that plaintiff was disabled as of April 1996
following a work injury (Tr. 279).

To be afforded controlling weight the opinion of a
physician must be "well supported by medically acceptable
clinical and laboratory diagnostic techniques ... and [be] not
inconsistent with the other substantial evidence."  20 C.F.R. §
404.1527 (2003).  In determining what weight, if any, medical
opinions should be given, the degree to which the opinion is
supported by other relevant medical evidence and is consistent
with the record as a whole should be considered.  Id.

Here, plaintiff's argument overlooks the fact that he
was able to work after his April 1996 injury.  Indeed, plaintiff
not only reported to the Agency that he became unable to work as
of October 30, 1998, but he amended his onset date at the hearing
to reflect that date which was two and one-half years after Dr.
Kahn certified him as disabled (Tr. 38, 87).  Moreover, plaintiff
indicated in a disability report that he worked until 1997 as a
power station worker and his earnings records show earnings in
1998 (Tr. 83, 85).  Thus, it appears that Dr. Kahn's findings are
not only contradicted by other evidence of record, and therefore
not entitled to controlling weight, but the fact plaintiff was

13

able to work with his impairments as recorded by Dr. Kahn appears

to preclude a finding that he was disabled at that time.  Jones

v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (Upholding the

ALJ's finding that the claimant was not disabled where his

impairments dated back many years and did not prevent him from

maintaining employment.)  See Adorno v. Shalala, 40 F.3d 43, 48

(3d Cir. 1990) (Finding that the ultimate decision as to whether

a claimant is disabled is reserved to the Commissioner.)  See

also 20 C.F.R. § 404.1527(e)(1)-(3).

        Plaintiff also argues that the ALJ failed to consider

his manipulative limitations cause by arthritis of the left

thumb.  See Plaintiff's Brief, p. 5.  The record, however,

appears devoid of any medical opinions or clinical or diagnostic

findings which would indicate that plaintiff has any manipulative

limitations.  Indeed, Dr. Kahn's records, upon which plaintiff

appears to rely, describe no such limitations and Dr. Bryan, the

state agency reviewing physician, found none (Tr. 280, 255).

Thus, plaintiff's argument is without support and cannot provide

the basis for finding that ALJ erred.

        Plaintiff next argues that the ALJ erred in failing to

adopt the functional limitations that were set forth by Dr. Kahn.

Dr. Kahn's findings, however, are not supported by the clinical

and diagnostic findings of record (Tr. 260, 280).  See 42 U.S.C.

§ 423(d)(3).  Indeed, Dr. Bryan determined that the clinical

findings supported only a limitation to light work as of
plaintiff's date last insured (Tr. 252-61).  Thus, not only does
it appear that the ALJ's findings have ample support in the
record, but because the ALJ is required to choose between
conflicting medical conclusions and may reject a treating
physician's opinion where there is contradictory medical
evidence, it does not appear that the ALJ erred.  See Morales v.
Apfel, 225 F.3d 310, 317 (3d Cir. 2000); Cotter v. Harris, 642
F.2d 700, 705 (3d Cir. 1981).  See also 20 C.F.R. §
404.1527(d)(2)(2004).

Plaintiff also suggests, in a footnote, that the ALJ
disregarded his treating physicians' opinions when they were
favorable to the plaintiff and considered them only when they
were not.  His assertion, however, appears to be contradicted by
the record as the ALJ did adopt the limitations as described by
Dr. Kahn to the extent he restricted plaintiff to sedentary work
with non-exertional limitations (Tr. 23, 24, 280).

Moreover, the other medical opinions to which plaintiff
refers to support his position are not of record in this case.
Specifically, plaintiff argues that the ALJ gave controlling
weight to the opinion of consultative examiner, Dr. Ballantyne,
while rejecting the opinion of a consulting psychologist, Dr.
Lanz, and points to pages 16 through 18 of the record as
reflecting the ALJ's decision in this regard.  See Plaintiff's

15

Brief, p. 6-7 n.4.  Not only does the ALJ's decision appear at
pages 22-25 of the transcript and not at pages 16-18, but the ALJ
does not refer at all to a Dr. Ballantyne or a Dr. Lanz and no
opinion from either of those doctors appears to be included in
the administrative record.  As such, plaintiff's argument appears
to be without merit.

        Plaintiff also argues that the ALJ erred in failing to
consider his need for a cane.  See Plaintiff's Brief, pp. 7-8.
Although it does not appear that the ALJ specifically addressed
the fact that plaintiff used a cane, he nevertheless found, based
in part on the VE's testimony, that prior to December 13, 2002,
plaintiff was capable of performing simple repetitive sedentary
work in a low stress environment which existed in significant
numbers in the national economy such as a surveillance systems
monitor, a general office clerk and a cashier (Tr. 24, 25).  When
asked whether the need for a cane would alter her assessment, the
VE testified that these jobs could still be performed although
the number of office clerk jobs would be reduced by fifty percent
(Tr. 56).  Thus, notwithstanding plaintiff's use of a cane or the
ALJ's omitted reference thereto, it appears that plaintiff would
still be able to perform 888,500 jobs existing in the national
economy and would not alter the ALJ's findings that plaintiff was
able to work prior to December 13, 2002 (Tr. 52-53, 56).

Finally, we note that plaintiff has argued, again in a footnote, that the ALJ erred in finding that plaintiff was not credible because there was no evidence of end organ damage. Plaintiff cites to page 15 of the transcript as evidencing the ALJ's deficiencies in this regard and points to page 274 as providing evidentiary support for his assertion that Dr. Ayers reported neuropathic damage in plaintiff's right eye on April 4, 1997.  See Plaintiff's Brief, p. 4 n.2.  Neither reference, however, provides the support plaintiff would have the Court find.  First, page 15 of the transcript is the Notice of Appeals Council Action, not the ALJ's decision, and makes no reference to end organ damage.  Second, page 274 of the transcript is part of the state agency psychologist's report, not that of Dr. Ayers, and clearly does not mention neuropathy damage in plaintiff's right eye.  Moreover, not only has the Commissioner represented that she is unable to find such a treatment note in the record, but the reports that are in the record dated May 10, 2001, and December 10, 2002, indicate that there is no evidence of diabetic retinopathy (Tr. 144, 247).  Thus, it appears that plaintiff's assertion that he had visual impairments due to diabetes prior to his date last insured that were not considered by the ALJ is not supported by the record.

Summary judgment is appropriate where there are no disputed material issues of fact and the movant is entitled to

judgment as a matter of law.  Fed. R.Civ. P. 56(c).  In the

instant case, there are no material issues of fact in dispute and

it appears that the Commissioner's determination is supported by

substantial evidence.  For this reason, it is recommended that

plaintiff's motion for summary judgment (Docket No. 8) be denied,

that defendant's motion for summary judgment (Docket No. 13) be

granted, and that the decision of the Commissioner be affirmed.

     Within ten (10) days of being served with a copy, any

party may serve and file written objections to this Report and

recommendation.  Any party opposing the objections shall have

seven (7) days from the date of service of objections to respond

thereto.  Failure to file timely objections may constitute a

waiver of any appellate rights.

                              Respectfully submitted,


                              /s/ Amy Reynolds Hay
                              AMY REYNOLDS HAY
                              United States Magistrate Judge


Dated:   17 October, 2005


cc:  Honorable Joy Flowers Conti
     United States District Judge

     Zenford A. Mitchell, Esq.
     P.O. Box 99937
     Pittsburgh, PA 15233

     Jessica Lieber Smolar
     Assistant United States Attorney
     United States Attorney's Office
     700 Grant Street
     Suite 400
     Pittsburgh, PA 15219